IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                CRIMINAL ACTION NO. 2:25-cr-00130

JAMES ROBERT MCKINNEY,

        Defendant.

MEMORANDUM OPINION AND ORDER

Pending before the Court is the Joint Statement by the United States ("the Government") and James Robert Mckinney ("Defendant") that concerns a factual basis for his guilty plea.   (ECF No. 39).   For the reasons discussed below, the Court **FINDS** there is an insufficient factual basis.

## I.      *BACKGROUND*

This matter arises out of Defendant's guilty plea to a single-count Indictment, which charges him with Failure to Register as a Sex Offender in violation of 18 U.S.C. § 2250(a).   (*See* ECF No. 1, 27.)   On September 9, 2025, Defendant pled guilty to the charge.   (ECF No. 27.)   The Government presented a factual basis for the plea in the form of witness testimony by Deputy U.S. Marshal Mark Waggamon ("DUSM Waggamon").   DUSM Waggamon testified generally to the Sex Offender National Registration Act ("SORNA") requirements and Defendant's trip to Florida.   The Court deferred a factual basis finding.   (ECF No.27.)   Subsequently, the United States Probation Office ("Probation") filed a Presentence Report ("PSR").

1

The information from the PSR and DUSM Waggamon's testimony did not provide a sufficient factual basis.   Indeed, both the PSR and DUSM Waggamon's testimony failed to specify the following:

- The jurisdiction where the Defendant failed to register or update his information in violation of the Sex Offender National Registry Act ("SORNA").

- The exact date(s) this failure to update or register became a SORNA violation; and specifically, if this failure occurred before or after Defendant traveled to Florida.

- The exact information the Defendant failed to provide that forms the basis of the SORNA violation.

Consequently, on March 9, 2026, the Court ordered the parties to file a joint statement, signed by Defendant, that informed the Court of these facts.   (ECF No. 38.)   The parties filed a joint statement on March 16, 2026.   (ECF No. 39.)

## II.     LEGAL STANDARD

Rule 11 of the Federal Rules of Criminal Procedure requires the court to "to determine that there is a factual basis for the plea" before entering judgment on the guilty plea.   F. R. Crim. P. R. 11(b)(3).   "[T]he district court 'possesses wide discretion,' and it 'need only be subjectively satisfied that there is a sufficient factual basis for a conclusion that the defendant committed all of the elements of the offense.'"   *United States v. Ketchum*, 550 F.3d 363, 366 (4th Cir. 2008) (quoting *United States v. Mitchell*, 104 F.3d 649, 652 (4th Cir. 1997)).   "The district court is not required to replicate the trial that the parties sought to avoid or to rely only on the Rule 11 plea colloquy[.]"   *Id.* (internal quotations and citations omitted).   "Rather, the district court may conclude that a factual basis exists from anything that appears on the record[.]"   *Id.*   (internal

quotations and citations omitted).    In fact, "[a] stipulated recitation of facts alone is sufficient to support a plea."   *Id.* (quoting *United States v. Wilson*, 81 F.3d 1300, 1308 (4th Cir. 1996)).

### III.    DISCUSSION

Before this Court can enter judgment, it must find a factual basis for Defendant's charged violation of 18 U.S.C. § 2250(a).   Under this statute,

> [w]hoever . . . is required to register under the Sex Offender Registration and Notification Act[,] . . . is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction[,] . . . travels in interstate or foreign commerce[,] . . . and knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act [shall be guilty of a crime against the United States].

18 U.S.C. § 2250(a).   Individuals may be convicted under this statute if they (1) are a sex offender as defined by SORNA; (2) are required to register under SORNA; (3) traveled in interstate or foreign commerce; and (4) knowingly failed to register or update registration as required by SORNA.   *See* 18 U.S.C. § 2250(a); *see also United States v. Spivey*, 956 F.3d 212, 215 (4th Cir. 202) (listing elements).   As discussed below, there is a sufficient factual basis for the first three elements, but not the fourth element.

### A.  Defendant is a Sex Offender

A "sex offender," as defined by SORNA, is an "individual who was convicted of a sex offense."   24 U.S.C. § 20911(1).   A "sex offense" includes "a criminal offense that has an element involving a sexual act or sexual contact with another[.]"   34 U.S.C. § 20911(5)(a). Sexual act includes "contact between the penis and the vulva or the penis and the anus, . . . contact involving the penis occurs upon penetration, however slight."   18 U.S.C. § 2246(2).   Here, Defendant pled guilty to Counts One, Four, and Six of his Doddridge County Indictment.   (PSR at 7–8, ¶ 28.)   Count Six charged Defendant with Sexual Assault in the Third Degree, a violation

3

of West Virginia Code § 61-8B-5.   (Indictment, *West Virginia v. McKinney*, No. 11-F-8 (Doddridge Cnty. Cir. Ct. 2011).)   Count Six further alleged that Defendant engaged in "sexual intercourse" by "plac[ing] his penis in the vagina of K.J.L." (*Id.*)   Thus, Defendant committed a "sex offense" as defined by SORNA.

### B. *Defendant is required to register under SORNA*

Pursuant to 34 U.S.C. § 20915(a) a Tier I Sex Offender is required to register for a period of 15 years, and a Tier II Sex Offender is required to register for a period of 25 years.   Under the modified categorical approach[1] and SORNA[2] Defendant is properly classified as a Tier II Sex Offender.

On September 4, 2012, Defendant was convicted in the Circuit Court of Doddridge County,

---

[1] To determine tier classification under SORNA, the court must compare the defendant's prior sex offense with the offenses listed in SORNA's tier definitions.   *U.S. v. Berry*, 814 F.3d 192, 195 (4th Cir. 2016).   The Fourth Circuit recognizes the following analytical framework for this type of inquiry—the "categorical approach" and its derivative, the "modified categorical approach."   *Id.*   Under the categorical approach, the court "focuses solely on the relevant offenses' elements, comparing the elements of the prior offense of conviction with the elements of the pertinent federal offense[.]"   *Id*.   When "the elements of the prior offense 'are the same as, or narrower than,' the offense listed in the federal statute, there is a categorical match.'"   *Id.*   (citations omitted).   However, "if the elements of the prior conviction 'sweep[ ] more broadly,' such that there is a 'realistic probability' that the statute of the offense of prior conviction encompasses conduct outside of the offense enumerated in the federal statute, the prior offense is not a match."   *Id.* at 195–96 (citations omitted).
"The modified categorical approach is almost identical, but it applies only to divisible statutes—those containing alternative elements—and it entails a brief 'detour.'   Before looking for a categorical match" the court considers "a limited number of trial documents, including the indictment . . . to determine which alternative element formed the basis of the conviction.   Then the traditional elements-based approach resumes."   *U.S. v. Faulls*, 821 F.3d 502, 513 (4th Cir. 2016).

[2] Under SORNA, a Tier II sex violation includes "a sex offender other than a tier III sex offender whose offense is punishable by imprisonment for more than 1 year and . . . is comparable to or more severe than the following offense[], when committed against a minor: . . . abusive sexual contact (as described in section 2244 of title 18)[.]"   34 U.S.C § 20911(3)(A)(iv).   Abusive sexual contact is defined as "knowingly engag[ing] in or caus[ing] sexual contact with or by another person, if so to do would violate" one of six cross-referenced federal statutes "had the sexual contact been a sexual act."   18 U.S.C. § 2244(a).   One of these cross-referenced statutes is 18 U.S.C. § 2243(a), which prohibits a person from "knowingly engag[ing] in a sexual act with another person" who "has attained the age of 12 years but has not attained the age of 16 years" and "is at least four years younger than the person so engaging."   Thus, "abusive sexual contact occurs" if an offender knowingly engages in a sexual act with a minor under 16 years old, when he is at least four years older the minor.   See 18 U.S.C. § 2244(a); 18 U.S.C. § 2243(a).   Accordingly, if the offender engages in this type of "abusive sexual contact" then the offender can be classified as a Tier II Sex Offender under SORNA.   See 34 U.S.C § 20911(3)(A)(iv).

West Virginia, of three counts of third-degree sexual assault in violation of W. Va. Code §61-8B-5. (PSR at 3, ¶ 6.) This code section has two sets of elements, so the Court must use the modified categorical approach and look at court documents, "including the indictment" from Defendant's conviction to determine which of these elements formed the basis of the conviction. *U.S. v. Faulls*, 821 F.3d 502, 513 (4th Cir. 2016).

The relevant document here is Defendant's Indictment. According to the Indictment, Defendant engaged in sexual intrusion (Counts 1–3) and sexual intercourse (Counts 4–6) with a minor victim. (Indictment, *West Virginia v. McKinney*, No. 11-F-8 (Doddridge Cnty. Cir. Ct. 2011).) Defendant pled guilty to Counts One, Four, and Six. (PSR at 7–8, ¶ 28.) Defendant's conduct occurred when Defendant was 25 years old and the victim was fourteen years old. (Indictment, *West Virginia v. McKinney*, No. 11-F-8 (Doddridge Cnty. Cir. Ct. 2011).) Accordingly, Defendant was convicted under the second set of elements, which require a showing that "[t]he person, being 16 years old or more, engages in sexual intercourse or sexual intrusion with another person who is less than 16 years old and who is at least four years younger than the defendant." W. Va. Code § 61-8B-5(2) (emphasis added).

With these state elements in mind, the Court must now determine if there is a categorical match to the Tier II Sex Offender definitions under 34 U.S.C. § 20911. "[A] a defendant is a tier II sex offender if he has committed an offense that is 'comparable to or more severe than'" abusive sexual contact, as defined by 18 U.S.C. § 2244. *See Berry*, 814 F.3d at 197.

Here, Defendant "intentionally . . . engag[ed] in sexual intercourse with K.J.L., . . . at a time when K.J.L. was less than sixteen years old and [Defendant] . . . was at least sixteen years old and at least four years older than K.J.L." (Indictment, West Virginia v. McKinney, No. 11-F-8

(Doddridge Cnty. Cir. Ct. 2011).)    This conduct is comparable to or more severe than "abusive sexual contact" as defined under SORNA.[3]    Thus, there is a categorical match between 34 U.S.C § 20911(3)(A)(iv) and W. Va. Code § 61-8B-5(2).    *See Berry*, 814 F.3d at 195.    Thus, Defendant is properly classified as a Tier II Sex Offender.    Consequently, under the statute, Defendant is required to register under SORNA until 2037.    *See* 34 U.S.C. § 20915(a)(2).[4]

### C.  Defendant traveled in interstate commerce

Under the third element, the individual must travel out of state.    Here, Defendant left West Virginia and traveled to Florida by Greyhound bus.    (PSR at ¶ 11.)    Thus, this element is clearly met.

### D.  Defendant knowingly failed to register or update registration as required by SORNA

---

[3] SORNA defines "abusive sexual contact" as ""knowingly engag[ing] in a sexual act with another person" who "has attained the age of 12 years but has not attained the age of 16 years" and "is at least four years younger than the person so engaging."    *See* 18 U.S.C. § 2244(a)(3).    A "sexual act" means

> (A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;
> (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;
> (C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or
> (D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person;

18 U.S.C. § 2246(2).    Here, the indictment shows that Defendant engaged in "sexual intercourse" with the victim. (Indictment, West Virginia v. McKinney, No. 11-F-8 (Doddridge Cnty. Cir. Ct. 2011).)    West Virginia law defines "sexual intercourse" as "any act between persons involving penetration, however slight, of the female sex organ by the male sex organ or involving contact between the sex organs of one person and the mouth or anus of another person."    W. Va. Code § § 61-8B-1(6).    This definition of Defendant's prior offense is narrower than SORNA's definition of "abusive sexual contact[.]"    Likewise, West Virginia's definition of "sexual intrusion" is narrower than SORNA's definition of "abusive sexual contact."    W. Va. Code § 61-8B-1(7) (defining "sexual intrusion" as "any act between persons involving penetration, however slight, of the female sex organ or of the anus of any person by an object for the purpose of degrading or humiliating the person so penetrated or for gratifying the sexual desire of either party").

[4] Even if Defendant was a Tier I Sex Offender, he would have still been required to register during the relevant period in this case.    *See* 34 U.S.C. § 20915(a)(1) (requiring a Tier I Sex Offender to register for 15 years).

6

This element is where the idiomatic "rubber meets the road." To the Court's knowledge, there are only four discrete circumstances under SORNA that require a sex offender to update and/or provide registration. *See* 34 U.S.C. § 20913. As listed in the statute,

> [a] sex offender shall, not later than 3 business days after each *change of name, residence, employment, or student status,* appear in person in at least 1 jurisdiction involved pursuant to subsection (a) and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry.

34 U.S.C. § 20913 (emphasis added). Accordingly, SORNA requires a sex offender to update his registration when he changes his (1) name, (2) residence, (3) employment, or (4) student status. Yet the parties have not offered sufficient facts for the Court to find a violation under *any* of these circumstances.

Indeed, the parties failed to cite 34 U.S.C. § 20913 anywhere in their joint statement. Instead, the parties cited to a "Frequently Asked Questions" webpage located on a website for the Florida Department of Law. (ECF No. 39, at 2 n.1.) This webpage has proven unhelpful to the Court, though, as the parties still have not sufficiently established *why* SORNA required Defendant to register with Florida law enforcement. The parties seemingly assert that Defendant's SORNA violation arises from changes to his residence and employment. Yet, as discussed below, the Court disagrees. The joint statement, PSR, and plea hearing testimony do not sufficiently establish that Defendant violated SORNA by changing his residence or his employment.

"If a sex offender changes his residence, . . . he must update his registration within three business days, so that the sex offender registry remains current." *United States v. Price*, 777 F.3d 700, 702 (4th Cir. 2015). "The term 'resides' means, with respect to an individual, the location of the individual's home or other place where the individual habitually lives." 34 U.S.C. § 20911(13). "[T]he SMART Guidelines provide the proper definition of the term habitually lives"

which is "where 'a sex offender habitually lives in the relevant sense . . . for at least 30 days.'" *United States v. Kokinda*, 146 F. 4th 405, 416, 418 (4th Cir. 2025) (quoting 73 Fed. Reg. 38,062) (July 2, 2008)).   Also, "pursuant to the SMART Guidelines, the term should 'be understood to include places in which the sex offender lives with some regularity, and with reference to where the sex offender actually lives, not just in terms of what he would choose to characterize as his home address or place of residence for self-interested reasons.'"   *Id.* at 417 (quoting 73 Fed. Reg. 38,062).

Here, Defendant was living on the streets in St. Petersburg Florida from March 30, 2025, to April 22, 2025.   (ECF No. 39 at 2.)   According to the facts available to the Court at this time, as of March 26, 2026, Defendant allegedly moved out of his apartment[5] in West Virginia.   (PSR at 5, ¶ 10).   On or about March 30, 2025, Defendant arrived in Tampa, Florida, (*Id.* at ¶ 12), and on April 22, 2025, Florida law enforcement found him in St. Petersburg, Florida, (*Id.* at ¶ 9).   The parties state that Defendant "liv[ed] on the streets" of St. Petersburg, Florida from March 30, 2025, to April 30, 2025.   (ECF No. 39 at 2.)   Throughout this time Defendant never registered as a sex offender in Florida.   (*Id.*)   While these facts may *indicate* that Defendant changed his residence from West Virginia to Florida, they fail to sufficiently establish that Defendant "resided" in Florida for a period of at least 30 days.   Without more facts establishing that Defendant changed his residence to Florida, the Court cannot determine that Defendant changed his residence to Florida simply because he lived on the streets in St. Petersburg for twenty-three days.

---

[5] The Court is hesitant to give any weight to this fact because it appears to be in dispute.   (*See* PSR at 5, ¶ 10 n.2 ("The defendant denies that he quit his job or that he moved out of his apartment. He indicated he planned to return to both after spending a couple weeks in Florida.").)

An offender is also required to update his SORNA registration if he changes his employment.  *See* 34 U.S.C. § 20913.  Here, the parties state that Defendant "should have also reported his employment as being with Clearon Corporation located at 95 H Street in South Charleston, West Virginia."  (ECF No. 39 at 3.)  The joint statement only mentions Clearon one time, and the PSR merely notes that Defendant "last worked at Clearon/Solenis chemical manufacturing in South Charleston, West Virginia, from February 2024 to March 2025."  (PSR at 14, ¶ 48.)  While it may be true that Defendant failed to update his employment information as required by SORNA, the statement that Defendant "should have also reported his employment as being with Clearon" does not provide a sufficient factual basis.  With only this information, the Court is left to speculate about Defendant's violation and when/how exactly it occurred.

Accordingly, there is an insufficient factual basis for the fourth element.

### IV.    CONCLUSION

The Court **FINDS** that there is an insufficient factual basis at this time.  However, the Court is willing to entertain any additional stipulated factual information.  If the parties wish to submit additional information, **IT IS ORDERED** that they must do so within thirty days of the date of the entry of this order.  The sentencing currently set for **May 4, 2026**, is hereby **VACATED**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

9

ENTER:        April 28, 2026

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

10