**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

UNITED STATES OF AMERICA,

          Plaintiff,

v.                                    CRIMINAL ACTION NO. 2:25-cr-00130

JAMES ROBERT MCKINNEY,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

On June 17, 2026, this Court ordered the parties to file responsive briefing to "address whether the interstate travel element under 18 U.S.C. § 2250(a) is satisfied when a defendant's offense conduct is unrelated to his interstate travel." (ECF No. 64 at 3.) The parties filed timely responses to the Order. (ECF Nos. 65, 66.) For the reasons discussed below, the Court continues[1] to **FIND** that there is an insufficient factual basis for Defendant James Robert McKinney's ("Defendant") guilty plea.

### I.    BACKGROUND

This case arises out of Defendant's travel from West Virginia to Florida. On March 23, 2025, Defendant purchased a series of one-way Greyhound bus tickets, which ultimately led him to St. Petersburg, Florida on Sunday, March 30, 2025. (ECF No. 39 at 2.) Defendant stayed on

---

[1] The Court previously found an insufficient factual basis for the fourth SORNA element in its April 28, 2026, Memorandum Opinion and Order. (ECF No. 41.)

1

the streets of St. Petersburg for approximately twenty-three days, until local officers arrested him on April 22, 2025.   (*Id.*)

Defendant alleges that he intended only "to see some of the tourist sites in Florida and then return to his home in West Virginia."   (*Id.*)   Indeed, Defendant maintains that he "had no intent to move to Florida and change his residency to that state."   (*Id.*)   Defendant's interview with local St. Petersburg police suggests a similar intent.   During the interview, Defendant asserted that he planned to stay in St. Petersburg until "late May and then go back and turn [himself] in."   (ECF No. 66 at 4.)   He also informed the officer that he was "actually thinking" that "once he got [himself] set up to . . . see about" transferring his registration from West Virginia to Florida.   (*Id.* at 4.)

Before leaving West Virginia, Defendant worked full-time at Clearon Corporation ("Clearon"), at a facility located in South Charleston, West Virginia.   (ECF No. 46 at 1–2.) Defendant worked his last day at Clearon on March 21, 2025.   (*Id.*)   Defendant allegedly never contacted anyone at Clearon to inform them of his absence, nor did he submit an official notice of resignation.   (*Id.* at 2.)   Still, Defendant was "aware of Clearon's policy that if an employee did not show up for work on five consecutive days without a legitimate reason for his or her absence, the employee would be terminated."   (*Id.*)   Clearon officially terminated Defendant's employment on or about Friday, April 4, 2025, because he failed to report for work for nine consecutive days.   (*Id.*)

Following these events, a grand jury charged Defendant in this Court for Failure to Register as a Sex Offender in violation of 18 U.S.C. § 2250(a), a statutory section under the Sex Offender Registration and Notification Act ("SORNA").   (ECF No. 1.)   Defendant pled guilty to the

2

charge, (ECF No. 25), and the Court deferred finding a factual basis, (ECF No. 27).   On March 9, 2026, the Court ordered the parties to submit a joint statement informing the Court of certain information related to Defendant's SORNA violation.  (ECF No. 38.)  The parties submitted a joint statement, (ECF No. 39), asserting that Defendant violated SORNA by changing his residence to Florida and failing to update his registration with Florida authorities.   Then, the Court entered an order finding that a sufficient factual basis for Defendant's guilty plea exists for every element except the third, because the facts did not sufficiently establish that Defendant knowingly failed to register or update his registration.  *See United States v. McKinney*, No. 2:25-cr-00130, 2026 WL 1146372, at *4–5 (S.D. W. Va. April 28, 2026) (finding that Defendant's living on the streets of Florida for twenty-three days did not establish a change in residency).

After the Court made this finding, Defendant later filed a Second Motion to Schedule a Guilty Plea Hearing.  (ECF No. 46.)  In this motion Defendant alleged new factual information, arguing that he violated SORNA by failing to update West Virginia authorities of his employment termination.  (*Id.*)  This new factual information raises an issue with the second element, requiring that an offender travel in interstate commerce, *see* 18 U.S.C. § 2250 (a)(2)(B), namely, whether that jurisdictional element can be satisfied by an offender simply traveling to another state when his alleged failure to update his registration has no connection to his interstate travel.   The Court held a hearing on the motion, whereby it informed the parties that it was skeptical of Defendant's factual basis because Defendant's travel to Florida had no connection to the termination of his employment.  (ECF No. 64.)  Consequently, the Court ordered the parties to file responsive briefing addressing the interstate travel element, (*id.*); the parties filed their

3

respective responses on June 29, 2026, (ECF Nos. 65, 66). As such, the issue of whether a sufficient factual basis exists for Defendant's guilty plea is more than fully briefed.

## II.    LEGAL STANDARD

Rule 11 of the Federal Rules of Criminal Procedure requires the court to "to determine that there is a factual basis for the plea" before entering judgment on the guilty plea. F. R. Crim. P. R. 11(b)(3). "[T]he district court 'possesses wide discretion,' and it 'need only be subjectively satisfied that there is a sufficient factual basis for a conclusion that the defendant committed all of the elements of the offense.'" *United States v. Ketchum*, 550 F.3d 363, 366 (4th Cir. 2008) (quoting *United States v. Mitchell*, 104 F.3d 649, 652 (4th Cir. 1997)). "The district court is not required to replicate the trial that the parties sought to avoid or to rely only on the Rule 11 plea colloquy[.]" *Id.* (internal quotations and citations omitted). "Rather, the district court may conclude that a factual basis exists from anything that appears on the record[.]" *Id.* (internal quotations and citations omitted). In fact, "[a] stipulated recitation of facts alone is sufficient to support a plea." *Id.* (quoting *United States v. Wilson*, 81 F.3d 1300, 1308 (4th Cir. 1996)).

## III.    DISCUSSION

The Government argues that a sufficient factual basis exists in this case because SORNA does not include a purpose-of-travel requirement. (ECF No. 66.) In the alternative, the Government argues that even if a purpose-of-travel requirement exists, the Government has proven sufficient facts to show Defendant intentionally evaded his West Virginia registration requirements. Conversely, Defendant argues that under *Carr v. United States*, 560 U.S. 438 (2010), SORNA requires "some factual or temporal nexus between a defendant's interstate travel and the charged registration violation." (ECF No. 65.) The Court agrees with Defendant. As

discussed below, the interstate travel element under SORNA is more than a mere jurisdictional hook.

"Under SORNA, whoever (1) "is required to register under [SORNA]"; (2) "travels in interstate or foreign commerce"; and (3) "knowingly fails to register or update registration as required by [SORNA] . . . shall be fined . . . or imprisoned not more than 10 years, or both."   18 U.S.C. § 2250(a).   The Government must prove that there is a sufficient factual basis for all of these elements to establish a criminal violation of SORNA.   *See United States v. Gould*, 568 F.3d 459, 463 (4th Cir. 2009).

First, as an initial matter, the Court addresses the Government's interpretation of this Court's June 17, 2026, Order.   The Government construes that Order to suggest that "the purpose of interstate travel may be relevant."   (ECF No. 66.)   As such, the Government argues against a purpose-of-travel requirement, reasoning that including a purpose-of-travel requirement goes beyond the bounds of the statute and improperly adds a fourth element.   (*Id.*)   The Government completely misses the mark.   That Order does not suggest that SORNA includes a purpose-of-travel requirement.

Instead, the Order expressly suggests that "the interstate travel of a state sex offender must have some relation to his offense conduct for a SORNA violation to arise."   A state sex offender can violate SORNA regardless of his intent to violate the statute.   *See Gould*, 568 F.3d at 468.   In fact, had Defendant stayed on the streets of St. Petersburg, Florida, for thirty or more days, he would have violated SORNA, irrespective of whether his initial intent in traveling to Florida was to evade West Virginia's reporting requirements or to simply take a Florida vacation.

Consequently, the Court agrees with the Government that SORNA does not include a purpose-of-travel requirement.

The interstate travel element under § 2250(a)(2)(B), does, however, require that a sex offender's travel to another state have **some connection** to his alleged failure to register or update his registration.

The Supreme Court "expressly rejected the argument that" the interstate travel element is "solely a jurisdictional predicate." *United States v. Spivey*, 956 F.3d 212, 215 (4th Cir. 2020) (quoting *Carr*, 560 U.S. at 453–54). The statute "only" subjects state sex offenders to federal criminal liability "when . . . they used the channels of interest commerce in evading a State's reach." *Carr*, 560 U.S at 440. SORNA is "not so expansive" as to invoke "unlimited power" over every individual who fails to register and "at some point travels in interstate commerce." *Gould*, 568 F.3d at 471. An offender's interstate travel must have some connection to his alleged violation because "the element of interstate travel was . . . 'the very conduct at which Congress took aim.'" *See Spivey*, 956 F.3d at 215 (quoting *Carr*, 560 U.S. at 454)

Here, Defendant's travel to Florida has absolutely no connection to his alleged offense conduct—failing to update West Virginia authorities on the termination of his West Virginia employment. As of right now, the Government has not proven that Defendant traveled to Florida to change his residence[2], his employment, or to become a student in the state. *See* 24 U.S.C. § 20913(a) ("A sex offender shall register, and keep the registration current, in each jurisdiction

---

[2] The Court notes that had Defendant stayed in St. Petersburg for thirty days or more, as opposed twenty-three days, this would be an entirely different analysis because Defendant could be deemed to have changed his residence to St. Petersburg. *See United States v. Kokinda*, 146 F. 4th 405, 416, 418 (4th Cir. 2025) ("[T]he SMART Guidelines provide the proper definition of the term habitually lives" which is "where 'a sex offender habitually lives in the relevant sense . . . for at least 30 days.'" (quoting 73 Fed. Reg. 38,062) (July 2, 2008)).

where the offender resides, where the offender is an employee, and where the offender is a student."). The Government previously attempted to prove a SORNA violation by arguing that Defendant changed his residence to Florida and then failed to update Florida authorities. (ECF No. 39.) Had the Government successfully proven that Defendant changed his residence to Florida, Defendant's violation would be obvious, as his travel to Florida would be inextricably linked to the SORNA violation. Now, the Government attempts to conjure a § 2250(a)(2)(B) violation based solely on Defendant's West Virginia employment termination, arguing that Defendant's travel to Florida is sufficient because he failed to update West Virginia authorities about his employment after traveling to Florida. (ECF No. 66.) The Government does not allege—nor are there sufficient facts to show—that Defendant had any obligation to update his registration with Florida authorities. His registration requirements were solely tied to West Virginia. Accordingly, the Government's argument produces an "illogical result" as there is no "obvious federal interest" in punishing state sex offenders who *do not* "use the channels of interstate commerce in evading a State's reach." *See Carr*, 560 U.S. at 446, 452.

Under the Government's theory, Defendant would have violated SORNA even if he had merely traveled to Florida for a week of vacation, lost his employment, and failed to communicate his employment termination to West Virginia authorities. Such an interpretation loses sight of "the act of travel [being] an aspect of the harm Congress sought to punish[.]" *Id,* at 453. The Government's theory also conflicts with Congress's intent to "give[] the States primary responsibility for supervising and ensuring compliance among state sex offenders." *Id.* at 439. If this Court were to hold that state sex offenders who do not maintain their reporting requirements in their current state could be criminally punished under SORNA simply for incidental travel to

7

another state, the Court would be taking away the primary authority of the States to regulate their own sex offenders.

Additionally, the Government's argument overlooks the fact that Defendant had no actual way of knowing *when* Clearon would terminate his employment. A SORNA violation does not occur unless an individual "knowingly fails to . . . update a registration." 18 U.S.C. § 2250. "'[K]nowingly' . . . requires proof of knowledge of the facts that constitute the offense." *Bryan v. United States*, 524 U.S. 184, 192–93 (1998). True, Defendant allegedly "knew [Clearon's policy] that if he missed five consecutive days, he would no longer have his job at Clearon." (ECF No. 46 at 2.) But Defendant did not know if Clearon would actually enforce this policy; indeed, the facts show that Clearon did *not* enforce the alleged policy, and that Clearon terminated his employment after Defendant missed *nine* consecutive days. (*Id.*) The evidence therefore does not sufficiently show at this time that Defendant knew about his actual termination and when it would occur.

Accordingly, the Court rejects the Government's argument that a sufficient factual basis exists because Defendant traveled to Florida and subsequently failed to update West Virginia authorities of his employment termination.

Alternatively, the Government argues that a sufficient factual basis exists because Defendant traveled to Florida to evade West Virginia's reach. (ECF No. 66.) For support, the Government points to a series of statements made by Defendant during and after his arrest in Florida, including (1) giving a false name to the officer and "forgetting" his social security number, (2) asserting that he left West Virginia because of stress from work and probation requirements, and (3) admitting that he planned to stay in Florida until late May. (*Id.* at 4, 9.) The Government

8

alleges that these statements show that "[D]efendant traveled to Florida specifically to evade West Virginia's sex offender registration obligations." (*Id.* at 9.) If anything, these statements show that Defendant traveled to Florida to avoid his probation requirements, not his sex offender registration requirements.

Further, even if these statements did indicate that Defendant intended to travel to Florida to avoid West Virginia's reporting requirements, they still do not provide a sufficient connection between Defendant's travel to Florida and his failure to update West Virginia authorities about the termination of his West Virginia employment.

Finally, Defendant's reason for traveling remains in dispute. While the Government alleges Defendant traveled to Florida to evade his sex offender registration requirements, Defendant continues to maintain that he intended only "to see some of the tourist sites in Florida and then return to his home in West Virginia." (ECF No. 39 at 2.). Genuine though this dispute of fact may be, it is not the stuff of an adequate factual basis for a guilty plea. Factual disputes are reserved for resolution by trial.

Accordingly, the Court rejects the Government's alternative argument that a sufficient factual basis exists because Defendant allegedly attempted to evade West Virginia's reach by traveling to Florida.

### IV.    CONCLUSION

For these reasons the Court continues to **FIND** that there is an insufficient factual basis for Defendant's guilty plea. It is further **ORDERED** that Defendant's guilty plea is **REJECTED**. The Court will hold an **in-person** status conference on **August 18, 2026**, at **3:00 p.m.**, to discuss the upcoming trial currently scheduled for August 25, 2026, at 9:00 a.m.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER:        August 12, 2026

_____

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

10